IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

PATRICK DAVIS,                          :
                                        :
                    Plaintiff,          :
                                        :
            v.                          :        NO. 5:12-cv-146 (MTT) (CHW)
                                        :
BARCLAY BANTA, *et al.*,                :        Proceedings under 42 U.S.C. § 1983
                                        :        Before the U.S. Magistrate Judge
                    Defendants.         :
_____:

## REPORT AND RECOMMENDATION

Now before the Court is a Motion for Summary Judgment filed by Defendants David Etheridge, Clinton Westbrook and Barclay Banta. (Doc. 53).[1] Because there is no genuine issue of material fact regarding Plaintiff's excessive force claim, and because the Defendants are entitled to judgment as a matter of law, it is **RECOMMENDED** that the Defendants' Motion for Summary Judgment be **GRANTED**.

## BACKGROUND

Plaintiff's pro se Section 1983 action arises out of the Defendants' alleged excessive use of force during a cell extraction[2] at the Georgia Diagnostic and Classification Prison ("GDCP") on May 4, 2010. (Compl., Doc. 1, p. 7; Defs.' Mot. Summ. J., Doc. 53-2, p. 2). The record, which includes video evidence, indicates that Plaintiff was temporarily placed in a visitation booth following a medical examination relating to Plaintiff's chest pains. (Pl.'s Decl., Doc. 60-8, p. 1). Plaintiff claims that he lay on the booth's floor due to his pain, and that he was not able to get up when the Defendants arrived to retrieve him. (*Id.*). In response to Plaintiff's unwillingness or inability to comply with commands, the Defendants, members of the Correctional Emergency

_____

[1] Defendant Chad Littlejohn has not yet been served.

[2] A "cell extraction" is the involuntary removal of a recalcitrant prisoner from a cell. (Doc. 53-1, p. 2).

Response Team ("CERT"), assembled outside the visitation booth to perform a cell extraction. (Video, Ex. H, 1:25-1:40). Lieutenant Jessie Floyd supervised the extraction. Sergeant Leighton Walters and Lieutenant Dwain Williams, who are not parties to this action, each videotaped the extraction and subsequent events. (Defs.' S. Mat. Facts, Doc. 53-1, p. 7).   The officers were dressed in protective gear, including helmets and body padding.

Before any action was taken, Lieutenant Floyd again directed Plaintiff to "cuff-up," to place his hands through a flap in the cell door to be handcuffed. (Video, Ex. H, 1:40-1:55). After Plaintiff refused to do so, the extraction began. (*Id.* at 2:25-3:40). Defendants Etheridge, Westbrook, Banta, and Littlejohn rushed into the visitation booth. (*Id.*). Defendant Westbrook, who was first to enter, carried a "shock shield." (*Id.*). The parties dispute whether Defendant Westbrook discharged the shock-shield's current, but Plaintiff claims that he was shocked for "[p]robably three seconds." (P's Dep., Doc. 53-3, p. 10). The video evidence is inconclusive as to the use of the shock shield. There is no audible sound of the shield being used[3] or of Plaintiff reacting to an electric shock. The video shows that the shield was removed from the cell approximately twenty-five seconds after the officers entered.

Plaintiff is not visible in either video during most of the cell extraction, but he is heard saying "why are you choking me." (Ex. H, 3:25-3:35). The Defendants can be heard repeatedly telling Plaintiff to comply with all orders, and one of the Defendants is heard telling Plaintiff to "stop resisting and place your hands behind your back." (*Id.* at 3:15-3:25). Plaintiff claims that one of the Defendants "was pressing his thumb/finger in my neck, cutting my flow of oxygen," (Compl., Doc. 1, p. 7), but Plaintiff admits that the unknown officer applied pressure for only "probably three seconds," and that he stopped upon request. (P's Dep., Doc. 53-3, pp. 10-11).

---

[3] Defendants submitted a video with a demonstration of the shock shield. (Ex. J). This video indicates that the shield produces a clicking or buzzing sound when activated. Although that sound is not audible on the videos of the cell extraction, it is possible that the sound of the shield was drowned out by the voices of the officers.

Plaintiff also claims that the Defendants twisted his arms excessively and kneed his ribs, causing injuries, (Compl., Doc. 1, p. 7), but Plaintiff did not seek medical treatment for his arms or ribs and does not claim to suffer pain currently as a result of the Defendants' cell extraction. (P's Dep., Doc. 53-3, pp. 14, 17).

After the Defendants extracted Plaintiff from the visitation booth, they placed him in a restraining chair. (Ex. H, 3:40-5:00). Plaintiff claims that he was "improperly positioned in the chair" and that he "suffered excruciating pain in [his] left shoulder." (Compl., Doc. 1, p. 7). The video evidence appears to support Plaintiff's claim, although in the videos, Plaintiff complains of pain in his right shoulder. (Ex. H, 5:35-5:55). The videos also show that Plaintiff received medical attention for his shoulder less than one minute after complaining of pain (*Id.*), and that the Defendants acted to relieve Plaintiff's pain. (*Id.* 6:45-7:00). Plaintiff does not claim to suffer pain currently as a result of his placement in the restraining chair. (Pl.'s Dep., Doc. 53-3, pp. 17).

After the Defendants addressed Plaintiff's shoulder pains, they escorted Plaintiff back to a "strip" cell, where he was to be kept without clothing and personal possessions during an eight-hour cool-down period. (Ex. H, 7:00-11:30). *See, e.g., Sims v. Mashburn*, 25 F.3d 980, 981-82 (11th Cir. 19944). Once inside the cell, Defendants released the restraining chair's restraints, removed Plaintiff's clothing, lifted Plaintiff onto his metal mattress frame, and then backed slowly out of the cell. (Ex. H, 11:30-16:40). Plaintiff, who previously had claimed to be unable to walk, immediately got up and walked to his cell door. (*Id.* 16:40-16:50).

During the removal of his clothing, Plaintiff claims that an officer poked him in his left eye. (Compl., Doc. 1, p. 7). Prison medical staff attempted to inspect Plaintiff's eye through his cell-door window, but Plaintiff was either unable or unwilling to open his eye for inspection. (P's Dep., Doc. 53-3, p. 14). Six and one-half hours later, Plaintiff was able to open his eye, and it

was determined, by inspection through Plaintiff's cell-door window, that Plaintiff's eye was scratched. (*Id.*). Plaintiff does not claim to suffer pain currently due to his scratched eye but argues that he "[hasn't] been treated for that injury" so he "[isn't] certain if [he's] suffering." (*Id.* p. 17).

## LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the moving party is not entitled to judgment as a matter of law. *Id.* at 324-326. If the evidence presented by the non-movant is "not significantly probative" or "merely colorable," then summary judgment may be granted. *Anderson*, 477 U.S. at 249. Indeed, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**ANALYSIS**

The Defendants are entitled to summary judgment because the evidence is insufficient to support a finding that they "maliciously and sadistically" caused Plaintiff harm. "Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied in a good faith effort to maintain or restore discipline[,] and not maliciously and sadistically to cause harm." *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002) (internal quotations omitted). In determining whether force was applied "maliciously and sadistically," courts consider factors such as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted upon the prisoner, the extent of the threat to the safety of staff and inmates, and any efforts made to temper the severity of a forceful response." *Whitley v. Albers*, 475 U.S. 312, 321 (1986). "Unless it appears that the evidence, viewed in the light most favorable to plaintiff, will support a reliable inference of wantonness in the infliction of pain . . . the case should not go to the jury." *Id.* at 321-22. Because the evidence in this case does not support such an inference, it is recommended that the Defendants' Motion be granted.

a.   <u>Need for the Application of Force</u>

The record indicates that Plaintiff refused or was unable to comply with Lieutenant Floyd's "cuff-up" orders, requiring the Defendants to take "prophylactic, protective measures" to ensure their own safety when extracting Plaintiff from the visitation booth. *See, e.g., Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999) (noting that "even absent the exigency present during a riot-like disturbance, prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline") (internal quotations omitted). Similar prophylactic

measures were also necessary for the cell insertion—for placing Plaintiff back in his stripped-out cell. *See, e.g., Brown v. Smith*, 813 F.2d 1187, 1189 (11th Cir. 1987) (holding that "the use of an appropriate degree of force was justified . . . to accomplish the security interest of putting [a recalcitrant prisoner] back into his cell").

      b.  <u>Relationship Between Need and Amount of Force</u>

Even if, as Plaintiff claims, Defendant Westbrook discharged his shock shield, shocking Plaintiff for "[p]robably three seconds," the amount of force used in the cell extraction did not exceed the need. *See, e.g., Fennell v. Gilstrap*, 559 F.3d 1212, 1218 (11th Cir. 2009) ("our precedent permits the use of force even when a detainee is not physically resisting"). Although Plaintiff is not readily visible in the video evidence on file during much of the extraction process, the Defendants are, and they appear to use only a minimal degree of force in attempting to handcuff Plaintiff. The same is true of the cell insertion: the Defendants capably and professionally removed Plaintiff's clothing, against his will, and then then released Plaintiff from his restraints, all while using only a minimal degree of force in order to ensure their own safety. There is no indication from the video evidence that the Defendants applied force "maliciously and sadistically to cause harm," *Id.* at 1217, and indeed, Plaintiff does not even appear to allege that the Defendants intentionally caused him harm. (P's Dep., Doc. 53-3, p. 13).

c.  <u>Extent of Injury Inflicted</u>

By Plaintiff's own account, the only injury inflicted, apart from short-term discomfort, and perhaps bruising, was a scratched left eye. Plaintiff claims that his eye has not been examined, so he is "not certain if [he is] still suffering" as a result of being poked in the eye. (P's Dep., Doc. 53-3, p. 17).

d.   Extent of Threat to Officers and Inmates

Plaintiff was incarcerated in 1998 for aggravated assault. (Doc. 1, p. 1). In addition, the record suggests that the Defendants may have been rightfully suspicious of Plaintiff's alleged inability to stand and walk, as the video evidence clearly shows that Plaintiff was ambulatory immediately after he was placed in the strip cell, and only fifteen minutes after the cell extraction itself. (P's Dep., Doc. 53-3, p. 14).

e.   Efforts to Temper the Severity of Force

The record indicates the Defendants and other GDCP staff members acted to ease Plaintiff's discomfort and to reduce the need for and severity of force. Plaintiff was given warnings and instructions throughout the cell-extraction process. When Plaintiff complained of pain in his neck, the responsible Defendant adjusted his grip. When Plaintiff complained of pain in his shoulder, one of the Defendants adjusted the restraints on Plaintiff's restraining chair. Additionally, Plaintiff received prompt medical attention for both his shoulder and his eye.

Review of the *Whitley* factors shows that the use of force in this case, even when the evidence is viewed in the light most favorable to Plaintiff, was reasonable in the circumstances. The video evidence in particular shows that the extraction procedure was conducted carefully and according to procedure. Because Plaintiff was completely refusing to comply with instructions, some application of force was necessary to remove him from the visitation cell. The use of force was no more than necessary to remove Plaintiff from the cell while maintaining officer safety. In the brief struggle to restrain Plaintiff, there is no indication of kicking, punching, or other actions for the purpose of inflicting pain. Plaintiff received prompt medical attention following the extraction, and there is no evidence to indicate that he suffered more than *de minimis* injury during the incident.

## <u>CONCLUSION</u>

Because the undisputed evidence shows that the Defendants did not act "maliciously and sadistically" to cause Plaintiff harm, it is recommended that the Defendants' Motion be **GRANTED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the District Judge to whom the case is assigned **WITIHIN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 11th day of February, 2014.


s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge